**D. Wesley Cornish, Esquire**                **JURY DEMAND**
**Id #: 310865**                              Damage Assessment Required
**Cornerstone Legal Group, LLC**
**1510 Cecil B. Moore Avenue, Suite 301**
**Philadelphia, PA 19121**                    **Attorney for Plaintiffs**

**IN AND FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

*Plaintiff*

**KEVIN JONES**,

Case No._____

VS.

*Defendants*

**PHILADELPHIA POLICE OFFICER RAYMOND SINGLETON BADGE #5014, PHILADELPHIA POLICE OFFICER MICHAEL EDINGER BADGE #1455, CITY OF PHILADELPHIA, POLICE COMMISSIONER CHARLES RAMSEY, FIRST DEPUTY COMMISSIONER RICHARD ROSS JR., DEPUTY COMMISSIONER KEVIN BETHEL, DEPUTY COMMISSIONER THOMAS WRIGHT, DEPUTY COMMISSIONER WILLIAM BLACKBURN, DEPUTY COMMISSIONER DENISE TURPIN, PHILADELPHIA POLICE CHEMISTS JOHN DOE 1-3, , PHILADELPHIA POLICE CHEMISTS JANE DOE 1-3, PHILADELPHIA POLICE OFFICERS JOHN DOES 1-4, PHILADELPHIA POLICE OFFICERS JANE DOES 1-4**; officially, personally and all together individually, personally, joint, and severally.

---

**VERIFIED COMPLAINT**

1. Plaintiff Kevin Jones ("Jones") by and through counsel, D. Wesley Cornish, Esquire, states as follows:

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and the Civil

Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

3. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that Defendants reside in this district and virtually all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

5. Plaintiff is Kevin Jones, an individual and resident of the Commonwealth of Pennsylvania with an address of 3323 Harrold Street Philadelphia, Pennsylvania 19122.

## DEFENDANTS

6. Defendant is Raymond Singleton ("Singleton") Badge Number 5014, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 14th Floor Philadelphia, PA 19102.

7. Defendant is Michael Edinger ("Edinger") Badge Number 1455, a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

8. Defendant is the City of Philadelphia, a city of the first class, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, the Philadelphia Home Rule Charter and Philadelphia Code, with offices located at City Hall 1501 Market Street Room 215, Philadelphia, PA 19107.

9. Defendant is Charles Ramsey, the duly appointed Police Commissioner of the Philadelphia Police Department with principal offices located in the Police Administration Building, 8th and Race Streets, Philadelphia, PA 19107.

10. Defendant is First Deputy Commissioner Richard Ross, Jr. c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

11. Defendant is Deputy Commissioner Kevin Bethel, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

12. Defendant is Deputy Commissioner Thomas Wright c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

13. Defendant is Deputy Commissioner William Blackburn, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107 with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

14. Defendant is Deputy Commissioner Denise Turpin, c/o Law Department, 8th and Race Streets, Philadelphia, PA 19107with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

15. Defendant is Philadelphia Police Department Chemists John Does 1-3, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

16. Defendant is Philadelphia Police Department Chemists Jane Does 1-3, each is a police chemist for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 15th Floor Philadelphia, PA 19102.

17. Defendant is Philadelphia Police Officers John Does 1-4, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 14th Floor Philadelphia, PA 19102.

18. Defendant is Philadelphia Police Officers Jane Does 1-4, each is a police officer for the Philadelphia Police Department, with entity offices at 1515 Arch Street, 14th Floor Philadelphia, PA 19102.

## FACTUAL BACKGROUND

19. On or about February 26, 2013 Defendants  Singleton and Edinger conducted a drug investigation while on patrol for the Philadelphia Police Department around the 3000 Block of Arbor and Clearfield Streets in the City and County of Philadelphia, otherwise known as the 24th district, around approximately 11:10pm.

20. Defendant Singleton was operating a marked patrol vehicle with Defendant Edinger acting as the recorder, while both Defendants were wearing full uniform, which included a department issued firearm,

travelling eastbound on Clearfield Street and at the corner of Clearfield and Arbor Streets Defendant Singleton, observed Plaintiff Jones and another male later identified as Leonardo Roman, engaging in a brief conversation.

21. Shortly thereafter, Singleton observed, Mr. Roman hand Jones, an unknown amount of United States Currency and in return Jones emptied out a pill bottle and from that pill bottle removed two items into his hand and gave them to Mr. Roman.

22. When Singleton first observed Jones, he was approximately 25 feet away from him and was still operating his vehicle, and Singleton got within 10-15 feet of the transaction after he first observed Jones and Mr. Roman engaged in conversation.

23. Singleton and Edinger were unable to hear any conversation between Mr. Roman and Jones.

24. Singleton and Edinger were unable to determine any demonization of money.

25. Singleton and Edinger were unable to recall what occurred or where the money was placed after he received it from Mr. Roman.

26. Singleton and Edinger were unable to see any objects inside this amber colored pill bottle allegedly possessed by Jones.

27. Shortly after Edinger and Singleton observed Mr. Roman take possession of these unknown objects, both Mr. Roman and Jones saw the police vehicle and dropped all the items in their hands onto the cement.

28. Both Edinger and Singleton travelled against the standard direction of traffic on Arbor Street, and stopped the vehicle near where both Defendants observed Mr. Roman and Jones interacting.

29. Singleton stopped Mr. Roman and recovered from the ground near where he was standing four purple tinted small packages containing a white chunky substance, alleged crack cocaine, while Edinger stopped Jones and recovered items from the ground near him which included seven small purple tinted Ziploc baggies containing an off-white chunky substance, alleged crack cocaine.

30. Edinger and Singleton then arrested both Mr. Roman and Jones on February 26, 2013 and charged Jones with possession of a controlled substance and possession with intent to distribute a controlled substance.

31. On April 19, 2013, Edinger and Singleton testified at Jones preliminary hearing stating there was probable cause to arrest, detain, search, seize, and prosecute Jones for possession of controlled substances and possession with intent to distribute controlled substances, where Judge Frazier-Lyde held Jones on all charges for court.

32. Jones was formally arraigned on May 1, 2013 and had his pre-trial conference before the Honorable Frank Palumbo on May 21, 2013 and again on February 19, 2014, where Jones rejected any plea offers because he attested he was not guilty of any alleged criminal offense.

33. Jones filed and argued a motion to suppress on January 9, 2014 before the Honorable Carolyn H. Nichols in which Edinger and Singleton testified and at the proceedings conclusion, Judge Nichols denied Jones motion.

34. Jones trial began on April 29, 2014 before the Honorable Carolyn Nichols with jury selection and concluded on May 2, 2014.

35. The Commonwealth called among other persons, Edinger and Singleton as witnesses during Jones' trial and both made publicly sworn statements indicating probable cause existed, the observations made were truthful and accurate, and Jones was responsible for violating the criminal offenses charged within the indictment namely possession with intent to distribute controlled substances.

36. Jones called numerous witness on his behalf including court appointed private investigator, Christopher Lahneman ("Lahneman")  and Hein Tran ("Tran").

37. Lahneman testified about evidence regarding the physical circumstances on the 3000 Block of Arbor Street where it intersects with Clearfield Avenue. Lahneman presented pictures taken in the same area where Edinger and Singleton stated they observed Jones. These photos showed there was very little

light, the area was dark, and what time the lights were operational. These photos, maps, charts, and diagrams created, discovered, or otherwise obtained by Lahneman were entered into evidence.

38. Jones also called Tran who operated the Chinese food store on the block of 3000 Arbor Street where it intersects with Clearfield Avenue.

39. At Jones' preliminary hearing, suppression motion, and trial Singleton and Edinger testified they were able to clearly view Mr. Roman and Jones because "It was 11:10 at night, how was the lighting in the area? It was dark out, but there are street lights from houses. There's a Chinese food store on the opposite side of the street, so that also gives a little bit of light.".

40. Tran testified at Jones' trial he lives at 3068 Arbor Street right above the Chinese takeout restaurant he owns directly below on the first floor.

41. Tran testified he closes his restaurant promptly at 11pm every night due to a new law enacted by the City of Philadelphia to reduce loitering and the like.

42. Tran testified that he has closed his restaurant every night at exactly 11pm and does so by locking the doors and turning off the signs illuminating the business which are located on the outside and Tran further stated there was no reason he would have deviated on February 25, 2013.

43. After five jury questions on May 2, 2014, the jury found Jones not guilty of possession with intent to distribute a controlled substance, while the Commonwealth, nolle prossed the remaining simple possession of a controlled substance.

44. Due to his arrest, money legally earned and belonging to Jones, was seized by the Police and only a fraction of the total sum was placed upon a Philadelphia Property Receipt, with Edinger and Singleton not accounting for the remainder.

45. Edinger and Singleton were also verbally abusive and threatened by Jones with physical harm and additional unfounded charges unless he provided information to them, and never provided Jones with his *Miranda* rights or any other warning.

46. Jones was then physically assaulted by Edinger and Singleton for which they received numerous bodily and mental injures.

47. The evidence placed on the respective Property Receipts was examined and analyzed by the Philadelphia Police Department Chemistry Laboratory Chemists Jane and/or John Does 1-3, 1-3, and presented in further criminal proceedings regarding Jones.

## <u>COUNT I – ASSAULT & BATTERY</u>

48. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

49. At all times relevant hereto, Defendants were acting under and pursuant to the color of law as employees and/or agents acting on behalf and/or pursuant to the supervision of Defendants City of Philadelphia, Charles Ramsey, Sergeant Didonato, Sergeant Giulian, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin.

50. To set forth a claim for Assault and Battery the Plaintiff must establish[1] a person: 1) Attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[2]; or 2) Negligently causes bodily injury to another with a deadly weapon[3]; or 3) Attempts by physical menace to put another in fear of imminent serious bodily injury[4]

51. Each Defendant at all relevant times owed a sworn duty and obligation to act in accordance with standard and accepted police policies and procedures and safeguard all suspected persons' civil rights, liberties, and privileges from unwarranted curtailment.

---

[1] 18 P.S. §2701
[2] *Id*.
[3] *Id*.
[4] *Id*.

52. The Defendants collectively deprived while acting under color of law via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies, customs, and improper training rights, privileges, and immunities belonging to Plaintiffs.

53. The Defendants under color of law violated the Plaintiff's rights, privileges, and immunities to liberty, free assembly, equal protection, unreasonable search and seizure, due process, cruel and unusual punishment, freedom to move/travel, and to own property free from government removal without just compensation via their acts, omissions, conspiracies, lack of supervision, mismanagement, policies, customs, and improper training when these Police Officers failed at developing probable cause or procuring a truthful factually valid warrant before making an arrest absent exigent circumstances.

54. Defendants at all relevant times had a duty to uphold all Commonwealth and Federal Constitutional and Statutory laws in addition to those imposed from the Commonwealth of Pennsylvania including safeguarding a person's right to be free from unreasonable search, seizures, arrest, and the like.

55. Defendants physically exerted control over Plaintiffs by grasping and seizing his body, threatening him, striking them, and placing him into metal handcuffs.

56. The Defendants without reasonable cause, no warrant, and in clear violation of the Pennsylvania law regarding arrests and searches for probable cause pursuant to Commonwealth law which held Pennsylvania's citizens liberty and freedom to a much higher standard than the Federal Constitution warranted and there was no good faith or other applicable exception in this matter.

57. Defendants are liable for injuring Plaintiff because Defendants without a warrant, nor any just or probable cause, searched, seized, handcuffed, questioned, and transported them to the police station for further processing

58. The Defendants physically struck Jones numerous times in addition to violently throwing him to the ground where the Defendants effected an arrest where there was no resistance.

59. During the Defendants' assault, Plaintiff had personal property searched and seized improperly and all without being properly accounted for on the submitted property receipts.

60. Defendants ignored the Plaintiff's numerous and repeated requests to stop hurting him and continued to physically strike Plaintiffs and threatened to do more serious harm if they reported to any other police officers what they witnessed.

61. Defendants physically menaced Plaintiffs and attempted through threats and the physical violence from reporting, testifying to, or otherwise disclosing the actions the Plaintiff witnessed the Defendants commit thereby violating their Federal and Commonwealth Constitutional rights.

62. As a result of the injuries sustained by Plaintiffs due to the Defendants combined behaviors while acting under color of law, allowing a pervasive municipal/city and law enforcement policy and custom of not closely regulating the Police Department's, especially the 24th district and the narcotics strike force during narcotics investigations, and failing to properly supervise those under their command to prevent numerous civil rights deprivations.

63. The Defendants assault and battery, their confederates and co-conspirators assistance with active participation and concealment, displayed deliberate indifference and reckless disregard to supervise, monitor and properly train narcotics officers with respect to their duty to provide only truthful information in securing search and arrest warrants, their duty to ensure that relationships with confidential informants are in accord with police department protocol, their duty to provide accurate and truthful information to the District Attorney's Office, their duty to report misconduct and illegal actions of other officers, and the fabrication of evidence against an accused to justify their illegal actions and conduct directly, foreseeably, legally, and proximately caused Plaintiffs' injuries.

64. Defendant City of Philadelphia and the Philadelphia Police Department managed daily by Charles Ramsey has failed to properly discipline the defendant officers and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches,

seizures, arrests, and prosecutions, thereby causing the violations in this case and this callous and

reckless disregard authorizes Plaintiff to seek punitive damages[5].

65. Philadelphia Officers have been engaged in a widespread pattern of systematic abuses of power

including and not limited to assault related offenses for arresting Plaintiff but also for other crimes such

as corruption, evidence falsification, perjury, Hobbs Act robbery, and racketeering.

66. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active

participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin

Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to

not properly train, supervise, and manage police officers involved with drug investigations and

confidential informants utilized therein during illegal narcotic investigations directly, foreseeably,

legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following

damages

    a.  Past and future costs for medical treatment and care;

    b.  Extreme mental anguish, pain, and suffering;

    c.  Loss of past and future earnings and earning capacity;

    d.  Loss of enjoyment of life;

    e.  Loss of enjoyment of freedom;

    f.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual,

and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages

in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars

($150,000).

---

[5] *Smith v. Wade*, 103 S.Ct. 1625 (1983)

## COUNT II – FALSE ARREST

67. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

68. To establish a claim for false arrest Plaintiff must demonstrate an arrest was made without probable cause[6]

69. At all relevant times Defendants had a duty to train, supervise, promulgate proper policies and customs, and only use probable cause supported by truthful facts before arresting, touching, searching, and seizing Plaintiffs and to ethically and honestly and ensure those standards are especially met confidential informants are utilized for illegal narcotics investigations.

70. At all relevant times Defendants had a duty to not arrest, search, and imprison every person(s) seen conducting a commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest[7].

71. At all relevant times Defendants never observed either drugs or containers commonly known to hold drugs exchanged between the parties, thereby nullifying any probable cause to initiate an arrest and subsequent imprisonment[8].

72. Furthermore, at all relevant times Defendants did not observe multiple, complex, suspicious transactions as is also required to establish probable cause to make an arrest[9].

73. The Defendants knew Commonwealth law clearly demonstrated there was no probable cause because unlike *Commonwealth v. Dennis*[10], none of the Defendant Police Officers in the instant case were

---

[6] *Brockington v. City of Phila.*, 354 F.Supp.2d 563, 572 n.10 (E.D.P.A. 2005)
[7] *Commonwealth v. Lawson*, 454 Pa. 23, 29 (1973); *see Commonwealth v. Greber*, 478 Pa. 63 (1978)
[8] *Commonwealth v. Dennis*, 417 Pa. Super 425 (Pa. Super. 1993)
[9] *Lawson*, 454 Pa. at  29
[10] *Dennis*, 417 Pa. Super 425

responding to a citizen's complaint or to a legitimate, uncorrupted, regulated, supervised, and officer trained informant's tip[11].

74. Plaintiff complied with the Defendants commands, directions, and orders, because the Defendants were police officers acting under the color of law[12], and never attempted to flee, resist, or otherwise obstruct the Defendants' and therefore these facts eliminate another probable cause factor[13].

75. Defendants knowingly, intentionally, purposefully, and negligently failed to establish probable cause to determine Plaintiffs possessed controlled substances with the intent to deliver before without a warrant or exigent circumstance starting searching, seizing, physically striking, and improperly removing property from the Plaintiffs.

76. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

   a. Past and future costs for medical treatment and care;

   b. Extreme mental anguish, pain, and suffering;

   c. Loss of past and future earnings and earning capacity;

   d. Loss of enjoyment of life;

   e. Loss of enjoyment of freedom;

   f. Past and future pain and suffering, inconvenience, and emotional distress

---

[11] *Id.*

[12] While effecting the Plaintiffs' arrest and subsequent search warrants not all Defendants wore an official police uniform and did not identify themselves as law enforcement agents during any Plaintiffs' arrest.

[13] PRELIMINARY HEARING TRANSCRIPT

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT III – FALSE IMPRISONMENT

77. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

78. To set forth a claim for False Imprisonment the Plaintiff must establish a person: 1) Detained another person[14]; and 2) the detention's unlawfulness[15].

79. Any detention is unlawful if it is a consequence of a false arrest, including one made without probable cause[16].

80. Pennsylvania has a higher standard of protection for personal liberties, rights, and immunities than does the federal requirements[17].

81. The Defendants detained the Plaintiffs when during their respective arrests for an ongoing period.

82. The Defendants detention was unlawful because it was the result of a false arrest and/or made without probable cause.

83. Defendants at all times relevant hereto, acting under the color of law, within their scope of employment, and required duties, knowingly and unlawfully restrained Plaintiffs without probable cause, thereby substantially interfering with the Plaintiffs' liberty, privileges, immunities, and freedom interests.

---

[14] *Brockington v. City of Phila.*, 354 F.Supp. 2d 563, 572 n.10 (E.D.P.A. 2005)
[15] *Id.*
[16] *Id.*
[17] *Commonwealth v. Gary*, 586 A.2d 887, 894-95 (Pa. 1991) (At the outset, it is important to recognize that this Court may extend greater protections under the Pennsylvania Constitution than those afforded under the U.S. Constitution)

84. Defendants knowing and unlawful actions caused Plaintiffs unjust incarceration violating their federal and Commonwealth Constitutional rights, privileges, and immunities.

85. Defendants knew it was reasonably foreseeable if Plaintiffs received a future criminal conviction they would receive an improper prior criminal history record score in addition to possible other offense enhancements regarding both Commonwealth and Federal sentencing guidelines based upon an unlawful arrest grossly and shockingly violating his rights, privileges, and immunities.

86. The Defendants knowingly restrained the Plaintiffs while acting under the color of law substantially interfering with his liberties, privileges, and immunities including rights to possess property and not have it appropriated without just compensation, due process, equal protection, prohibition against cruel and unusual punishment, among others.

87. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a.  Past and future costs for medical treatment and care;

    b.  Extreme mental anguish, pain, and suffering;

    c.  Loss of past and future earnings and earning capacity;

    d.  Loss of enjoyment of life;

    e.  Loss of enjoyment of freedom;

    f.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT IV – MALICIOUS PROSECUTION

88. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

89. To set forth a claim for Malicious Prosecution[18] a Plaintiff must show: 1) The Defendant is a State Actor[19], 2) The Defendants initiated a criminal proceeding[20]; 3) The criminal proceeding ended in the Plaintiff's favor[21]; 4) The proceeding was initiated without probable cause[22]; 5) The Defendants acted maliciously or for a purpose other than bringing the Plaintiff to justice[23]; and 6) The Plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding[24].

90. At all times relevant hereto, Defendants were State and Commonwealth actors, acting under and pursuant to the color of law, as employees, appointees, and/or agents acting on behalf and/or pursuant to the supervision of Defendants City of Philadelphia, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin.

91. The Defendants initiated a criminal case against the Plaintiff via arrest[25].

---

[18] *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3rd Cir. 2003); *Johnson v. Knorr*, 477 F.3d 75, 82 (3rd Cir. 2007); *see Bradley v. General Accident Ins.*, 778 A.2d 707, 710 (Pa. Super 2001).
[19] *Estate of Smith*
[20] *Id*.
[21] *Id*.
[22] *Id*.
[23] *Id*.
[24] *Id*.
[25] CP-51-CR-0003595-2008, CP-51-CR-0011300-2008, CP-51-CR-0006437-2008

92. The proceeding initiated by the Defendants against Plaintiff in his criminal case, ended in his favor on May 2, 2014 when the jury found him not guilty and the Commonwealth nolle prossed the remaining charge.

93. The arresting Defendants in the instant case, knowingly lacked probable cause to stop, investigate, arrest, detain, charge, attest, and testify against the Plaintiff.

94. The Defendants never witnessed a narcotics transaction between Plaintiffs involving them or any other person.

95. The Defendants knew at the time they arrested and prosecuted Plaintiff, the Commonwealth of Pennsylvania provided a higher standard regarding preserving and protecting Constitutional rights, privileges, and immunities.

96. The Defendants acted with a malicious purpose when they fabricated, attested to, and testified about fraudulent evidence leading to a wrongful prosecution and constitutionally violative resultant incarceration for Plaintiff.

97. The Defendants acted with a malicious purpose when they fabricated, attested to, and testified about fraudulent evidence while acting pursuant to and under the color of law, utilized possession of their firearms to intimidate and place in apprehension and extreme fear of serious bodily injury and/or death the Plaintiffs to provide their personal property to the arresting Defendants against their will and vociferous verbal objections.

98. Falsifying official documents, testifying falsely after the oath requiring honesty is administered and affirmed, and actively concealing these actions to prosecute innocent persons and preserve those already obtained improperly, served no legitimate law enforcement or public welfare purpose and was used as a malicious and an extreme and outrageous event that shocks the conscience of any reasonable person, and is a complete betrayal of the Public's Trust and faith in law enforcement.

99. The Defendants' acts and omissions towards Plaintiff made him suffer a deprivation of liberty via significant incarceration terms both before and after their sentencing, which is consistent with the concept of seizure as a consequence of a legal proceeding.

100. The Plaintiff's liberty deprivation occurred for this prong's purposes were the consequence of numerous related legal proceedings from his initial bail hearings until his final trial disposition.

101. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a. Past and future costs for medical treatment and care;

    b. Extreme mental anguish, pain, and suffering;

    c. Loss of past and future earnings and earning capacity;

    d. Loss of enjoyment of life;

    e. Loss of enjoyment of freedom;

    f. Past and future pain and suffering, inconvenience, and emotional distress

    **WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

### COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

103. To set forth a claim for Intentional Infliction of Emotional Distress[26] a Plaintiff must demonstrate: 1) The Defendants' conduct was extreme and outrageous[27]; 2) Defendants' conduct was intentional or reckless[28]; 3) Defendants' conduct caused emotional distress[29]; and 4) The distress must be severe[30].

104. The Defendants' conduct is especially egregious, extreme, and shocking because they were all tasked with upholding general society's and the Philadelphia community's public safety, general welfare, order, and laws and instead used those powers to enrich themselves by stealing and misappropriating the Plaintiff's collective property, perpetrate fraud upon the criminal tribunals with their falsified documents and testimony, and the sheer size of their conspiracy.

105. This chain conspiracy has endemically perverted justice throughout the Philadelphia Police Department leading to a massive amount of corruption and abuses of authority leading to thousands of wrongful convictions and the destruction of peaceful life for some of the city's poorest, most at risk citizens, and neighborhoods is extreme and outrageous conduct. The number of families and persons harmed and emotionally scarred and damaged due to these Defendants' actions is currently too incalculably large to determine.

106. The Defendants knew pursuant to the Federal Constitution, the Commonwealth Constitution, and a litany of statutes and case law from both jurisdictions, and that Pennsylvania Courts and the Legislature have established a higher standard of protection for its citizens rights, liberties, privileges, and immunities, and the Defendants from attesting in police work and testifying in previous cases knew their conduct was unethical, unconstitutional, and illegal clearly intentionally and/or recklessly.

---

[26] *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1172 (1988)
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

107. Plaintiff suffered emotional distress due to Defendants' extreme and outrageous conduct.

108. The Defendants' actions caused the Plaintiff severe distress by imprisoning him, removing all his basic rights, freedoms, privileges, and immunities and causing them to miss spending time with his family members and friends, not being able to attend funerals, take care of sick and dying loved ones, miss weddings, and many other live events and milestones.

109. The Defendants' actions also deprived the Plaintiffs the opportunity for obtaining legitimate employment opportunities and additionally caused each Plaintiff, who were working when arrested, to lose his job, causing severe emotional trauma and anxiety due to his inability to properly provide for his respective family.

110. Plaintiff suffered severe emotional and psychological consequences and effects due to the Defendants' actions, which caused prolonged incarcerations, a place where the Defendants could reasonably foresee mental health, counseling, and psychological services are extremely limited and oftentimes below acceptable guidelines.

111. The Defendants herein referenced in the above-referenced count caused Plaintiff severe emotional distress from their actions including but not limited post-traumatic stress disorder, restlessness, sleeplessness, trauma, shock, fear, anxiety, depression, and numerous other related injuries.

112. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a.   Past and future costs for medical treatment and care;

b. Extreme mental anguish, pain, and suffering;

a. Loss of past and future earnings and earning capacity;

b. Loss of enjoyment of life;

c. Loss of enjoyment of freedom;

d. Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT  VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

113. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

114. To set forth a claim for Negligent Infliction of Emotional Distress the Plaintiff must show one of four factual scenarios: 1) Situations where the Defendant had a contractual or a fiduciary duty toward the Plaintiff[31]; or 2) The Plaintiff was subjected to Physical Impact[32]; or 3) The Plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury[33]; or 4) The Plaintiff observed a tortious injury to a close relative[34].

115. General principles of tort law suggest that Defendants owed Plaintiffs a duty of care under the circumstances because they were acting under the color of law as armed law enforcement agents, with specially enumerated governmental privileges to compel compliance and initiate the legal use of force.

[31] *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super 2008), *order aff'd by equally divided court*, 36 A.3d 83 (Pa 2011)
[32] *Id*.
[33] *Id*.
[34] *Id*.

116. The Commonwealth Superior Court indicated the reach of the first type of Negligent Infliction of Emotional Distress claim, relevant here, is limited "'to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach[35].'"

117. There must exist a special relationship between the Plaintiff and Defendant that "'encompass[es] an implied duty to care for the Plaintiff's emotional well-being[36].'"

118. Foreseeability of a Plaintiff's injury "is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate"[37].

119. The test for negligence is one of "reasonable foreseeability"[38].

120. All Defendants were acting under the color of law as armed law enforcement agents, with specially enumerated governmental privileges to compel compliance and initiate the legal use of force and knew and understood utilizing force may be necessary and therefore had a duty to only use the necessary amount of force to achieve their objectives.

121. The Defendants subjected the Plaintiffs to physical impact when they arrested and restraining them with metal handcuffs, searched, and seized their persons, vehicles, and shared home, then placed them into transportation in a locked, inescapable metal bar reinforced police vehicle, and placed them against their will into jail where no Plaintiff could leave.

122. *Consolidated Rail Corp*[39], provides the definition for zone of danger rules, and similarly here, at all times from their initial encounter with the Defendants until they were brought before the Court, the Plaintiff were in a zone of danger because due to the Defendants violent actions towards all of them in very close proximity to each other during their respective arrests, in addition to verbal threats and

[35] *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 218 (Pa. Super 2012)(quoting *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa 2011)(opinion in support of affirmance)
[36] *Id.* (quoting Toney v. Chester Cnty. Hosp., 36 A.3d at 95).
[37] *Carter Lincoln-Mercury, Inc. Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1294 (N.J. 1994)
[38] *Toney v. Chester Cnty.* Hosp., 961 A.2d 192, 199 (Pa. Super 2008) (quoting *Armstrong v. Paoli Mem. Hosp.*, 633 A.2d 605, 608 (Pa. Super 1993)).
[39] *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994) (holding if the zone of danger rule applies, plaintiffs suing for Negligent Infliction of Emotional Distress may only recover damages if they were [1] "placed in immediate risk of physical harm" and [2] frightened by the risk of harm)

coercion to prevent disclosing the Defendant's behavior subsequently made, placed every Plaintiff in immediate risk of physical harm by the Defendants' negligence and frightened each Plaintiff by the risk harm.

123. The Defendants' actions caused Plaintiff thereby to reasonably experience a fear of impending physical injury via his proximity to the danger zone.

124. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    a. Past and future costs for medical treatment and care;

    b. Extreme mental anguish, pain, and suffering;

    c. Loss of past and future earnings and earning capacity;

    d. Loss of enjoyment of life;

    e. Loss of enjoyment of freedom;

    f. Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT VII – CONVERSION

125. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

126. Pursuant to Pennsylvania law, conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification[40].

127. Conversion can result only from an act intended to affect chattel. Specific intent is not required, however, but rather intent to exercise dominion or control over the goods, which is in fact inconsistent with the plaintiff's rights, establishes the tort[41].

128. A plaintiff must demonstrate a present possessory right to the chattel in question before plaintiff can claim conversion[42].

129. Money may the subject of conversion[43] and a fiduciary or other trust relationship is irrelevant in determining whether a person converted property[44].

130. The United States currency and property removed from the Plaintiffs' persons, and property was legally possessed and Plaintiff had a legally protected interest within it[45].

131. When the Defendants removed money from the Plaintiff and seized other personal property and continue to unlawfully retain it, knowingly utilized these items for their own purposes, with the intent to deprive the owners' of rightful use, ownership, was clearly done without the Plaintiffs' consent and no lawful justification existed for doing so.

---

[40] *Bernhardt v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997); *Shonberger v. Oswell*, 530 A.2d 112 (Pa. Super. 1987); Stevenson v. *Economy Bank of Ambridge*, 197 A.2d 721, 726 (1964).
[41] *Bernhardt v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997)
[42] *Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003)
[43] *Shonberger v. Oswell*, 530 A.2d at 114; *Bernhardt v. Needleman*, 705 A.2d at 878; *Pearl Assurance Co. v. National Ins. Agency,* 30 A.2d 333, 337 (1943)
[44] *Martin v. National Surety Corp.*, 262 A.2d 672 (Pa 1970)
[45] *Bernhardt v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997)

**WHEREFORE**, Plaintiff demand judgment against Defendants Raymond Singleton and Michael Edinger, in their individual and personal capacities, individually, jointly, and severally in a compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT VIII – NEGLIGENCE

132. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

133. A supervisory official may be liable even where not directly involved in the constitutional violation. The misconduct of the subordinate must be "affirmatively link[ed]" to the action or inaction of the supervisor[46].

134. The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated[47].".

135. Plaintiff allege some Defendants were supervisors who were directly involved and participated with violating duties owed to the Plaintiffs.

136. Defendants along with other Defendants conspired and actively worked together and shared misappropriated property with one another whenever these acts were done towards innocent civilians including the Plaintiff.

---

[46] *Rizzo v. Goode*, 423 U.S. 362, 371 (1976);
[47] *Iqbal v. Hasty*, 490 F.3d 143,152 (2d Cir. 2007) *cert. granted sub nom Ashcroft v. Iqbal*, 128 S. Ct. 2931 (2008)

137. Defendants City of Philadelphia, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin failed to remedy the violations committed by subordinate Defendants despite numerous reports regarding malfeasance and abuse of authority submitted to them[48].

138. Defendants City of Philadelphia, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin while supervising subordinate Defendants allowed an internally created  and/or custom to not closely supervise, train, oversee, and maintain quality control on the Officers who conducted drug investigations.

139. Defendants City of Philadelphia, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin while supervising subordinate Defendants allowed a City policy and/or custom to not closely manage, supervise, conduct integrity checks upon, and/or otherwise utilize reasonable measures to ensure drug investigations are properly conducted that probable cause exists, information is reliable, cops do not falsify evidence, and/or are not serious criminals framing other persons to conceal their criminal activity.

140. Defendants City of Philadelphia, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin while supervising subordinate Defendants were grossly negligent in supervising subordinates who committed the violations.

141. Numerous public and private complaints were filed by persons throughout the jurisdiction claiming subordinate Defendants along with numerous other drug enforcement agents were on a wide and pervasive scale depriving suspects of their Federal and Commonwealth Constitutional Rights via property theft, aggravated assault, witness intimidation, false arrest, false imprisonment, assault, robbery, kidnapping, and other related crimes.

142. These complaints and requests for help against the subordinate Defendants, their coconspirators, and confederates conduct to their superiors went unheeded in a grossly negligent manner as these Officers

---

[48] These materials include but are not limited to Official Citizen Complaints, Internal Affairs Complaints, and Police Board of Inquiry Reports and Findings

were often exonerated or had charges against them classified as unfounded by the Police Department, Commissioners, superiors, and the Internal Affairs Department.

143. Defendant Commissioner Charles Ramsey has publicly expressed numerous times his inability to effect change within the Philadelphia Police Department via sterner discipline, suspensions, and/or terminations stems from the cost and concessions necessary to satisfy the Fraternal Order of Police Officers' Union.

144. The City was on and had warning since at least 2007 of the rampant malfeasance, corruption, perjury, and violent felonies committed by many officers assigned to the 24th district, 15th district, and the Narcotics Strike Force, via civil rights lawsuits, complaints to the Internal Affairs Department, indictments, and admissions to malfeasance by numerous officers within these units.

145. Defendants City of Philadelphia, Charles Ramsey, Richard Ross Jr., Kevin Bethel, Thomas Wright, William Blackburn, and Denise Turpin were deliberately indifferent to the Plaintiff's and others' rights by failing to act on information constitutional rights were being violated by Defendants on a massive scale and instead placed money, political gain, labor peace, lessened controversy, and liability above safeguarding the citizens they were entrusted with protecting all while acting under the color of law.

146. Plaintiff's injuries were the direct, legal, and proximate result of negligent acts and omissions committed by Defendants.

147. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    g.  Past and future costs for medical treatment and care;

    h.  Extreme mental anguish, pain, and suffering;

    i.  Loss of past and future earnings and earning capacity;

    j.  Loss of enjoyment of life;

    k.  Loss of enjoyment of freedom;

    l.  Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## <u>COUNT IX – DEFAMATION</u>

148. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

149. The Defendants' false attestations contained within the police paperwork and subsequent testimony in a public forum during open court proceedings caused the Plaintiffs injury, anxiety, embarrassment, loss of reputation, and fear and these communications by Defendants tend to harm the Plaintiffs' reputations and injure each of them in business and/or professional opportunities.

150. The falsified evidence, attestations, and testimony numerous times in different circumstances demonstrate these statements and writings about Plaintiff s were not subject to a potential innocent interpretation, which a reasonable person could infer.

151. The Defendants utilized actual malice and published their writings and words to the public with knowledge of their falsity and with a reckless disregard for the truth.

152. The Plaintiffs never consented to the Defendants making any such statements or writings as they did and continue to dispute them.

153. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

   m.  Past and future costs for medical treatment and care;

   n.  Extreme mental anguish, pain, and suffering;

   o.  Loss of past and future earnings and earning capacity;

   p.  Loss of enjoyment of life;

   q.  Loss of enjoyment of freedom;

   r.  Past and future pain and suffering, inconvenience, and emotional distress

   **WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## <u>COUNT X – INVASION OF PRIVACY</u>

154. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

155. The Defendants invaded the Plaintiff's privacy and portrayed him in a false light in the public eye by providing unwanted and negative publicity via falsifying criminal acts, presenting this fake material to a tribunal, and unjustly securing Plaintiffs conviction, extreme, outrageous, and highly offensive conduct.

156. These statements and writings are of no legitimate concern to the public, have no newsworthy value, and simultaneously drain the community's resources and erode its trust towards Government and law enforcement officials.

157. The Defendants actions when improperly searching and seizing Plaintiffs' person, vehicle, and shared home was a highly offensive intrusion of their solitude and enjoyment of peaceful assembly.

158. Plaintiff had a reasonable expectation of privacy on his person.

159. The Defendant arresting Police Officers' their confederates and co-conspirators assistance with active participation and concealment, and specifically the City of Philadelphia, Richard Ross, Jr., Kevin Bethel, Thomas Wright, William Blackburn, Denise Turpin, and Charles Ramsey custom and policy to not properly train, supervise, and manage police officers involved with drug investigations and confidential informants utilized therein during illegal narcotic investigations directly, foreseeably, legally, and proximately caused the Plaintiff to have suffered and/or will continue to suffer the following damages

    s. Past and future costs for medical treatment and care;

    t. Extreme mental anguish, pain, and suffering;

    u. Loss of past and future earnings and earning capacity;

    v. Loss of enjoyment of life;

    w. Loss of enjoyment of freedom;

    x. Past and future pain and suffering, inconvenience, and emotional distress

**WHEREFORE**, Plaintiff demands judgment against Defendants in an official, professional, individual, and personal capacity, individually, jointly, and severally for compensatory, punitive, and exemplary damages in addition to attorneys' fees, costs, interest, and the like in excess of one hundred and fifty-thousand dollars ($150,000).

## COUNT XII – JURY DEMAND

160. Plaintiff alleges and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

161. Plaintiff demands a jury to determine the extent of damages and provide a full and fair hearing pursuant to the United States Constitutional Amendments V, VI, and XIV.

## COUNT XII – PUNITIVE DAMAGES

162. Plaintiff allege and incorporate via reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

163. In awarding punitive damages, "[t]he proper focus is on 'the act itself together with all the circumstances."[49]  The focus, therefore, is on the conduct, not on the excuses offered at trial. Furthermore, " '[p]unitive damages may be awarded for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the rights of others.' "[50].

164. Defendants' actions in depriving Plaintiff of their rights, freedoms, and liberties is so outrageous as to shock the conscience of reasonable persons and evidence reckless indifference for the Plaintiff's rights.

165. Municipalities and cities are liable for damages flowing from constitutional violations that it caused through the execution of its policy or custom.

---

[49] *Rizzo v. Haines*, **520 Pa. 484**, 507, **555 A.2d 58**, 69 (1989).
[50] *Feld v. Merriam*, **506 Pa. 383**, 395, **485 A.2d 742**, 747-48 (1984).

166.   The City of Philadelphia did that here by failing to properly train, supervise, investigate, hold

accountable, prevent, and arrest a litany of rogue officers with the Department, especially the districts

drug investigation units operating in high traffic/crime narcotics areas[51].

**WHEREFORE**, Plaintiff demands exemplary and punitive damages plus attorneys' fees and costs in

an amount in excess of One-Hundred and Fifty–Thousand Dollars ($150,000) against all Defendants, officially,

personally, professionally, individually, jointly, and severally.


Respectfully Submitted,


David Wesley Cornish, Esquire
Bar Id No: 310865
Supervising Attorney
Cornerstone Legal Group, LLC
1510 Cecil B. Moore Avenue, Suite 301
Philadelphia, PA 19121
888-313-1385
215-752-6762 (Facsimile)
ATTORNEY FOR PLAINTIFFS

*DATE*: February 14, 2015

---

[51] *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-92 (1978); *see Owen v. City of Independence*, 445 U.S. 622 (1980).

## <u>VERIFICATAION OF COMPLAINT</u>

I, Kevin Jones, a citizen of the United States of America and resident of Philadelphia County,

Pennsylvania, hereby declare that I have read the foregoing Verified Complaint and the factual

allegations therein, and the facts as alleged and true and correct.

Date:   February 14, 2015


_____

Kevin Jones


_____

David Wesley Cornish, Esquire

Supervising Attorney

Cornerstone Legal Group, LLC


Sworn to and subscribed before me this the _____ day of February, 2015


_____

**NOTARY PUBLIC**


**My Commission Expires**:


_____